UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

TEJINDER SINGH, Individually and on
Behalf of All Others Similarly Situated,

                       Plaintiff,

    vs.

ORTHOFIX INTERNATIONAL N.V., ALAN
W. MILINAZZO, BOB VATERS, BRIAN
MCCOLLUM, BRAD MASON and EMILY
BUXTON,

                  Defendants.

———————————————————————x

Civil Action No. __13 CV 5696__

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Orthofix International N.V. ("Orthofix" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of purchasers of the common stock of Orthofix between May 5, 2011 and July 29, 2013, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company's shares are traded over the NASDAQ Stock Market ("NASDAQ"), an electronic securities exchange located in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Tejinder Singh, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Orthofix during the Class Period and has been damaged thereby.

7.      Defendant Orthofix, a medical device company headquartered in Curacao, Netherlands Antilles, designs, develops, manufactures, markets, and distributes medical equipment used principally by musculoskeletal medical specialists for spine and orthopedic applications. The Company operates through two segments, Spine and Orthopedics.

8.      (a)     Defendant Alan W. Milinazzo ("Milinazzo") served as the Company's President and Chief Executive Officer ("CEO") from April 2006 to July 2011.

        (b)     Defendant Bob Vaters ("Vaters") served as the Company's President and CEO from August 2011 to March 2013.  Prior to that, Defendant Vaters served as Vice President, Chief Operating Officer and President, Spine Global Business Unit from January 2011 to July 2011. Defendant Vaters served as a member of the Company's Board of Directors at times relevant herein.

        (c)     Defendant Brian McCollum ("McCollum") served as the Company's President, Spine Global Business Unit from November 2012 to July 2013.  Prior to that, Defendant McCollum served as Chief Financial Officer ("CFO") and President, Spine Global Business Unit from October 2012 to November 2012, and CFO and Senior Vice President, Finance from March 2011 to October 2012.

        (d)     Defendant Brad Mason ("Mason") became the Company's President and CEO in March 2013.

        (e)     Defendant Emily Buxton ("Buxton") served as the Company's CFO since November 2012.  Prior to that, Defendant Buxton served as Interim CFO from October 2012 to November 2012 and CFO, Global Orthopedics from 2010 to October 2012.

- 2 -

(f)      Defendants Milinazzo, Vaters, McCollum, Mason and Buxton are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.      It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the above officers of Orthofix, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.      As officers and controlling persons of a publicly-held company whose shares were, and are, registered with the SEC pursuant to the Exchange Act, and were, and are, traded over the

NASDAQ, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded shares would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Orthofix, each of the Individual Defendants had access to the adverse undisclosed information about Orthofix's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Orthofix and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is

- 4 -

responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Orthofix common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Orthofix's business, operations, management and the intrinsic value of Orthofix common stock; and (ii) caused Plaintiff and other members of the Class to purchase Orthofix common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Orthofix between May 5, 2011 and July 29, 2013, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Orthofix common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Orthofix or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Orthofix;

(c)     whether the price of Orthofix common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     The Class Period commences on May 5, 2011.  On that date, Orthofix issued a press release announcing its financial results for the first quarter of 2011.  For the quarter, the Company reported net sales of $139.2 million and a net loss of $35.8 million, or ($2.00) per diluted share.

22.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations.  During the call, Defendants reiterated the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.  During the call, Defendant Milinazzo commented on the Company's financial results, stating in pertinent part as follows:

> Moving on to the business side, I want to comment on a few areas of our performance in Q1. Consistent with the organizational changes that we implemented in late 2010, beginning in January we began reporting our global businesses around spine, orthopedics, and sports medicine. As you will recall, our strategy has been to focus on these three markets, which represent over $12 billion in market potential worldwide.

> We were particularly pleased with the continued strong results of the spinal implants and biologic business within our spine sector. Those revenues were up 14%, well above the market growth rates. New products and enhanced distribution continue to fuel this growth.

> Another highlight of the quarter was our sports medicine business, which was up 5% over last year, driven in part by new products, strong commitment by our distribution partners, and the addition of a billing platform purchased in Q1.

> Finally, we are hopeful that the beginning of the process to resolve our bone growth stimulation matter will lead to stability in our stimulation business, which has clearly suffered in the last couple of quarters.

23.     On May 10, 2011, Orthofix filed with the SEC its Form 10-Q, signed by Defendants Milinazzo and McCollum, for the quarter ended March 31, 2011 (the "1Q11 Form 10-Q").  The 1Q11 Form 10-Q, among other things, reiterated the financial results reported by the Company on May 5, 2011.  The 1Q11 Form 10-Q also described the Company's disclosure controls and procedures, and Defendants' certifications thereon, stating, in pertinent part, as follows:

- 7 -

*Disclosure Controls and Procedures*

Under the supervision and with the participation of our management, including our President and Chief Executive Officer and our Chief Financial Officer and Senior Vice President of Finance, we performed an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Exchange Act Rule 13a – 15(e) or 15d – 15 (e)) as of the end of the period covered by this Form 10-Q. Based upon that evaluation, our President and Chief Executive Officer and Chief Financial Officer and Senior Vice President of Finance concluded that, as of the end of the period covered by this Form 10-Q, our disclosure controls and procedures were effective.

*Changes in Internal Control over Financial Reporting*

There have not been any changes in our internal control over financial reporting during the fiscal quarter ended March 31, 2011 that have materially affected or are reasonably likely to materially affect, our internal control over financial reporting.

\*       \*       \*

I, [Defendants Milinazzo and McCollum], certify that:

1.      I have reviewed this quarterly report on Form 10-Q of Orthofix International N.V.;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

        a.      designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

      b.     designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

      c.     evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

      d.     disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has material affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

      a.     all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

      b.     any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

24.     On July 28, 2011, Orthofix issued a press release announcing its financial results for the second quarter of 2011. For the quarter, the Company reported net sales of $143.6 million and net income of $10 million, or $0.54 per diluted share. Defendant Vaters commented on the Company's financial results, stating, in pertinent part, as follows:

> The investments and focus in Spinal Implants and Biologics, as well as renewed efforts and added capabilities in Sports Medicine have produced solid results. Although I am encouraged by quarterly sequential growth in stimulation we continue to face challenges in this franchise. We are driving earnings improvement by delivering operating margin expansion and are benefiting from lower financing costs.

25.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendants reiterated the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

26.     On August 5, 2011, Orthofix filed with the SEC its Form 10-Q, signed by Defendants Vaters and McCollum, for the quarter ended June 30, 2011 (the "2Q11 Form 10-Q"). The 2Q11 Form 10-Q, among other things, reiterated the financial results reported by the Company on July 28, 2011 and contained the certifications of Defendants Vaters and McCollum on the adequacy of the Company's disclosure controls and procedures.

27.     On October 27, 2011, Orthofix issued a press release announcing its financial results for the third quarter of 2011. For the quarter, the Company reported net sales of $144.7 million and net income of $12.4 million, or $0.66 per diluted share. Defendant Vaters commented on the Company's financial results, stating, in pertinent part, as follows:

> I'm extremely pleased with our earnings improvement and record quarterly revenue. We continue to deliver strong profitability and top-line growth amidst industry headwinds. At the same time we are upgrading talent and focusing our pipeline investments. I expect these improvements to continue as we resolve our pending legal matters and increase our investment in new products.

28.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendants reiterated the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

29.     On October 31, 2011, Orthofix filed with the SEC its Form 10-Q, signed by Defendants Vaters and McCollum, for the quarter ended September 30, 2011 (the "3Q11 Form 10-Q"). The 3Q11 Form 10-Q, among other things, reiterated the financial results reported by the

Company on October 27, 2011 and contained the certifications of Defendants Vaters and McCollum on the adequacy of the Company's disclosure controls and procedures.

30.     On February 23, 2012, Orthofix issued a press release announcing its financial results for the fourth quarter and full year ended December 31, 2011. The Company reported nets sales of $151.5 million and $579 million for the fourth quarter and full year ended December 31, 2011, respectively. The Company reported net income of $12.4 million, or $0.66 per diluted share, for the fourth quarter and net loss of $1.1 million, or $0.06 per diluted share, for the full year ended December 31, 2011. Defendant Vaters commented on the Company's financial results, stating, in pertinent part, as follows:

> 2011 was an important year of transition for the Company highlighted by several key achievements that together represent an important point of inflection for the Company. We are now well positioned to focus on long term revenue growth across our Regenerative and Repair product platforms, all while continuing to deliver on our commitment of growing our earnings in excess of our sales.

31.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendants reiterated the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

32.     On February 29, 2012, Orthofix filed with the SEC its Form 10-K, signed by Defendants Vaters and McCollum, for the year ended December 31, 2011 (the "2011 Form 10-K"). The 2011 Form 10-K, among other things, reiterated the financial results reported by the Company on February 23, 2012 and contained the certifications of Defendants Vaters and McCollum on the adequacy of the Company's disclosure controls and procedures.

33.     The 2011 Form 10-K described the Company's revenue recognition procedures, stating, in pertinent part, as follows:

*Revenue Recognition*

Revenue is generally recognized as income in the period in which title passes and the products are delivered. Revenues exclude any value added or other local taxes, intercompany sales and trade discounts. Shipping and handling costs are included in cost of sales. Royalty revenues are recognized when the royalty is earned.

For stimulation and certain bracing products that are prescribed by a physician, we recognize revenue when the product is placed on or implanted in and accepted by the patient. For domestic spinal implant and HCT/P products, revenues are recognized when the product has been utilized and a confirming purchase order has been received from the hospital. For sales to commercial customers, including hospitals and distributors, revenues are recognized at the time of shipment unless contractual agreements specify that title passes on delivery. Revenues for inventory delivered on consignment are recognized as the product is used by the consignee.

In 2008, we entered into an agreement with the Musculoskeletal Transplant Foundation ("MTF") to develop and commercialize Trinity ® Evolution ™, a stem cell-based regenerative biologic matrix. With the development process completed in 2009, we and MTF operate under the terms of a separate commercialization agreement. Under the terms of this 10-year agreement, MTF sources the tissue, processes it to create the regenerative matrix, packages and delivers it to the customer in accordance with orders received from us. We have exclusive global marketing rights for Trinity ® Evolution™ and receive a marketing fee from MTF based on total sales. This marketing fee is recorded on a net basis within net sales. On January 9, 2012 we entered into an agreement with MTF to both co-develop and commercialize a new technology for use in bone grafting applications and to expand MTF's Trinity Evolution processing capacity. MTF and Orthofix also extended the initial term of their existing agreement for an additional five years.

We derive a significant amount of revenues in the U.S. from third-party payors, including commercial insurance carriers, health maintenance organizations, preferred provider organizations and governmental payors such as Medicare. Amounts paid by these third-party payors are generally based on fixed or allowable reimbursement rates. These revenues are recorded at the expected or pre-authorized reimbursement rates, net of any contractual allowances or adjustments. Certain billings are subject to review by the third-party payors and may be subject to adjustment.

34.     On April 26, 2012, Orthofix issued a press release announcing its financial results for the first quarter of 2012. For the quarter, the Company reported net sales of $143.1 million, representing an increase of 3% over the first quarter the prior year, and net income of $12 million, or $0.63 per diluted share, compared to a loss of $2.00 in the prior year. The Company reported that strategic product sales, which exclude trailing revenues from the divested vascular business, grew

4% on a reported basis and 5% on a constant currency basis.  Defendant Vaters commented on the

Company's financial results, stating, in pertinent part, as follows:

> I am very pleased with the performance during the quarter, especially the Company's
> return to investing in R&D while still maintaining double-digit earnings growth.
> With the signing of the agreement to sell the Sports Medicine business, we believe
> our strengthened balance sheet and narrowed focus on our value proposition in the
> Spine and Orthopedic businesses will provide a better platform to continue to create
> value for our shareholders.

35.      That same day, Orthofix held a conference call with analysts and investors to discuss

the earnings announcement and the Company's operations.  During the call, Defendants reiterated

the financial results from the press release and made positive statements about Orthofix, its business,

earnings and operations.

36.      On May 4, 2012, Orthofix filed with the SEC its Form 10-Q, signed by Defendants

Vaters and McCollum, for the quarter ended March 31, 2012 (the "1Q12 Form 10-Q").  The 1Q12

Form 10-Q, among other things, reiterated the financial results reported by the Company on

April 26, 2012 and contained the certifications of Defendants Vaters and McCollum on the adequacy

of the Company's disclosure controls and procedures.

37.      On July 26, 2012, Orthofix issued a press release announcing its financial results for

the second quarter of 2012.  For the quarter, the Company reported net sales of $119.5 million,

representing an increase of 2% over the second quarter of the prior year, and reported that net

income from continuing operations was $14 million, or $0.73 per diluted share, compared to net

income from continuing operations of $10.5 million, or $0.57 per diluted share, in the prior year.

Defendant Vaters commented on the Company's financial results, stating, in pertinent part, as

follows:

> The second quarter results demonstrate the strength of our Regenerative Solutions
> and highlights our strategy to leverage our differentiated product offerings across
> both our Spine and Orthopedic business units.  In addition, the close of the Sports

Medicine divestiture provides us with the financial capacity and flexibility to make the necessary investments to drive long-term growth.

38.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations.  During the call, Defendants reiterated the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

39.     On July 30, 2012, Orthofix filed with the SEC its Form 10-Q, signed by Defendants Vaters and McCollum, for the quarter ended June 30, 2012 (the "2Q12 Form 10-Q").  The 2Q12 Form 10-Q, among other things, reiterated the financial results reported by the Company on July 26, 2012 and contained the certifications of Defendants Vaters and McCollum on the adequacy of the Company's disclosure controls and procedures.

40.     On October 16, 2012, the Company announced that it promoted Defendant McCollum to the position of President, Spine Global Business Unit effective as of November 6, 2012 and promoted Defendant Buxton to the position of Interim CFO effective as of November 11, 2012.

41.     On October 24, 2012, Orthofix issued a press release announcing its financial results for the third quarter of 2012.  For the quarter, the Company reported net sales of $114.8 million, representing a decrease of 2% over the third quarter of the prior year, and reported that net income from continuing operations was $13.1 million, or $0.67 per diluted share, compared to net income from continuing operations of $13.0 million, or $0.69 per diluted share, in the prior year. Defendant Vaters commented on the Company's financial results, stating, in pertinent part, as follows:

> We again demonstrated our ability to achieve operating margin leverage while navigating through a challenging environment.  Finishing the quarter with a net cash balance and continued strong adjusted earnings, we are well positioned to make product portfolio and distribution investments that will drive long-term growth.

42.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations.  During the call, Defendants reiterated

the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

43.     On November 2, 2012, Orthofix filed with the SEC its Form 10-Q, signed by Defendants Vaters and McCollum, for the quarter ended September 30, 2012 (the "3Q12 Form 10-Q"). The 3Q12 Form 10-Q, among other things, reiterated the financial results reported by the Company on October 24, 2012 and contained the certifications of Defendants Vaters and McCollum on the adequacy of the Company's disclosure controls and procedures.

44.     On February 21, 2013, Orthofix issued a press release announcing its financial results for the fourth quarter and full year ended December 31, 2012. The Company reported nets sales of $112 million and $462.3 million for the fourth quarter and full year ended December 31, 2012, respectively, and fourth quarter 2012 net income from continuing operations of $14.6 million, or $0.74 per diluted share, for the fourth quarter and net income of $53.9 million, or $2.78 per diluted share, for the full year ended December 31, 2012.

45.     Defendant Vaters commented on the Company's financial results, stating, in pertinent part, as follows:

> I am extremely pleased with our fourth quarter and full year adjusted net income from continuing operations, both records for the Company as we have exceeded our multi-year margin expansion goals. As we previously announced, I was disappointed by our performance in international markets, as well as by our Spine Regenerative Stimulation business where we experienced sales turnover from the implementation of our Corporate Integrity Agreement. While we remain focused on overcoming near-term challenges that are impacting top-line growth, we have improved the Company's margins and overall financial profile while removing the burden of significant government investigations. This improved financial position provides financial flexibility for increased investment in the product pipeline and inorganic activities that will drive future growth.

46.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendants reiterated

the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

47.     On March 1, 2013, Orthofix filed with the SEC its Form 10-K, signed by Defendants Vaters and Buxton, for the year ended December 31, 2012 (the "2012 Form 10-K"). The 2012 Form 10-K, among other things, reiterated the financial results reported by the Company on February 21, 2013 and contained the certifications of Defendants Vaters and Buxton on the adequacy of the Company's disclosure controls and procedures.

48.     On March 12, 2013, Orthofix entered into a letter agreement with Defendant Vaters, pursuant to which Vaters' employment with Orthofix would cease as of the close of business on March 12, 2013, and that Vaters resigned from the Board of Directors of the Company as of such date. On the same date, Orthofix entered into an employment agreement with Defendant Mason, effective as of March 13, 2013, pursuant to which Mason was appointed as Orthofix's President and CEO.

49.     On April 1, 2013, the Orthofix Board of Directors promoted Defendant Buxton to CFO of the Company.

50.     On May 8, 2013, Orthofix issued a press release announcing its financial results for the first quarter of 2013. For the quarter, the Company reported net sales of $100.3 million, a 14% decrease over the first quarter of the prior year, and reported that net income from continuing operations was $4.9 million, or $0.25 per diluted share, compared to $0.64 per diluted share in the prior year. Defendant Mason commented on the Company's financial results, stating, in pertinent part, as follows:

> I am delighted to rejoin Orthofix and am confident that I can lead the Company in a way that will maximize its potential to create shareholder value. I am very encouraged by the many strengths I see in our organization.

That said, the first quarter sales and earnings results were disappointing. The good news is that the primary issues that led to these results are identifiable, within our control, and fixable. We are developing a strategy with specific initiatives that will both improve our internal competencies and drive growth.

Importantly, Orthofix generated free cash flow of $9 million in the quarter which, in spite of the revenue shortfall, highlights the underlying stability of Orthofix's business. Given this and our confidence in our prospects for the future, the Board has approved a share repurchase program of up to $50 million. The Board and I believe that, while Orthofix's stock is trading at current valuations, this is an appropriate use of cash and will benefit the shareholders.

51.     The press release contained a second quarter 2013 outlook, stating, in pertinent part, as follows:

Q2 2013 Outlook

For the second quarter, the Company expects revenues to be between $104 million and $107 million. The Company noted that in June 2013 it will host a call to outline plans to drive revenue growth, enhance performance and create long-term value for shareholders. The Company will provide updated annual guidance at that time.

52.     That same day, Orthofix held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendants reiterated the financial results from the press release and made positive statements about Orthofix, its business, earnings and operations.

53.     On May 9, 2013, Orthofix filed with the SEC its Form 10-Q, signed by Defendants Mason and Buxton, for the quarter ended March 31, 2013 (the "1Q13 Form 10-Q"). The 1Q13 Form 10-Q, among other things, reiterated the financial results reported by the Company on May 8, 2013 and contained the certifications of Defendants Mason and Buxton on the adequacy of the Company's disclosure controls and procedures.

54.     On June 18, 2013, the Company announced that Defendant McCollum resigned from employment at the Company.

55.     Defendants' statements referenced above in ¶¶21-39, 41-47, and 50-53 were each materially false and misleading when made because they misrepresented or failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)     certain revenues recognized during 2011 and 2012 should not have been recognized or should not have been recognized during the periods in which they were recognized;

(b)     the Company's previously issued consolidated financial statements as of and for the fiscal years ended December 31, 2011 and December 31, 2012 (as well as the interim quarterly periods within such years), as well as for the interim quarterly period ended March 31, 2013, should not be relied upon;

(c)     the Company's financial statements during 2011, 2012, and the first quarter of 2013 were materially false and misleading by violating Generally Accepted Accounting Principles and Orthofix's publicly disclosed policy of revenue recognition;

(d)     the Company's Forms 10-Q and 10-K for fiscal years 2011 and 2012 (as well as interim quarterly periods within such years), as well as for the first quarter of 2013 failed to disclose then presently known trends, events or uncertainties associated with the Company's revenues that were reasonably likely to have a material effect on Orthofix's future operating results;

(e)     the Company's disclosure controls and its disclosure controls and procedures over financial reporting were materially deficient and its representations concerning them during the Class Period, including certifications issued by Defendants, were materially false and misleading; and

(f)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company's financial performance and outlook during the Class Period.

56.     On July 29, 2013, the Company issued a press release announcing that it was delaying

the release of its financial results for the second quarter of 2013, stating, in pertinent part, as follows:

> Orthofix International N.V. (NASDAQ:OFIX) (the Company) today announced that
> it is postponing the release of its financial results for the second quarter 2013 and its
> previously announced conference call to discuss such results, including
> management's Business Analysis and Key Strategic Initiatives Update, originally
> scheduled for July 31, 2013.

> The Company stated that the Audit Committee of its Board of Directors, on the
> recommendation of management, and after discussion with the Company's
> independent auditors, concluded that additional time is needed to review matters
> relating to revenue recognition for prior periods.   The Audit Committee has
> commenced an independent review into these matters, with the assistance of outside
> professionals. The Audit Committee cannot predict the length of time or outcome of
> its review.

> The Company noted that, as a result of these matters, it expects to file a Form 12b-25
> (Notification of Late Filing) with the Securities and Exchange Commission (SEC)
> for the quarter ended June 30, 2013.   The Company does not expect to file its
> quarterly report on Form 10-Q for such period by the August 9, 2013 deadline.

> At this time, the Company is not providing annual or quarterly guidance for 2013.

57.     In response to these announcements on July 29, 2013, the price of Orthofix shares

declined from $27.40 prior to the announcements, to $22.71 per share, or a drop of 17%, on July 30,

2013, on extremely heavy trading volume.

58.     On August 6, 2013, Orthofix issued a press release stating that the Company will

restate its financial statements for fiscal years 2011 and 2012 and the first quarter of 2013, stating, in

pertinent part, as follows:

> Orthofix International N.V. (NASDAQ:OFIX) (the "Company") today provided an
> update regarding the previously disclosed independent review being conducted by
> the Audit Committee (the "Audit Committee") of the Company's Board of Directors
> (the "Board"), with the assistance of outside professionals, of matters relating to
> revenue recognition for prior periods.

> Although the Audit Committee review remains at a preliminary stage, on August 5,
> 2013, the Audit Committee concluded, after consultation with management and the
> Company's independent registered public accounting firm, that certain revenues
> recognized during 2011 and 2012, upon further evaluation, should not have been

recognized or should not have been recognized during the periods in which they were recognized. As a result of the foregoing, on August 5, 2013, the Audit Committee concluded, after consultation with management and the outside auditors, that the Company's previously issued consolidated financial statements as of and for the fiscal years ended December 31, 2011 and December 31, 2012 (as well as the interim quarterly periods within such years), as well as for the interim quarterly period ended March 31, 2013, should no longer be relied upon. On August 6, 2013, the Board ratified the foregoing conclusion by the Audit Committee.

Management continues to assess the Company's disclosure controls and procedures and internal control over financial reporting for current and prior periods. Management does not expect to reach a final conclusion on the effectiveness of the Company's internal control over financial reporting and disclosure controls and procedures until completion of the restatement process, but expects to report in future or amended filings the existence of one or more material weaknesses in the Company's internal control over financial reporting relating to the restatement.

The Audit Committee is continuing its review. At this time, the Company cannot predict the aggregate amount of revenue that will ultimately be restated, whether additional periods beyond those referenced above will be affected, the final outcome or timing of the Audit Committee's continuing review of these matters, or the timing of the Company's filing of restated financial statements for the affected annual and quarterly periods.

"We are focused on achieving our key priorities and providing customers with the highest level of products and service they have come to expect from Orthofix," said Brad Mason, Orthofix President and Chief Executive Officer. "Our commitment to developing and delivering innovative orthopedic solutions remains unwavering and, thanks to the hard work and dedication of our employees, we remain confident with respect to the Company's future prospects."

59.     The market for Orthofix common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Orthofix common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased Orthofix common stock relying upon the integrity of the market price of Orthofix common stock and market information relating to Orthofix, and have been damaged thereby.

60.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Orthofix common stock, by publicly issuing false and misleading statements

and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

61.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Orthofix's business, products and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Orthofix and its business, products and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

62.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Orthofix, their control over, and/or receipt and/or modification of Orthofix's allegedly materially misleading misstatements and/or their associations

- 21 -

with the Company which made them privy to confidential proprietary information concerning

Orthofix, participated in the fraudulent scheme alleged herein.

63.     Defendants were further motivated to engage in this fraudulent course of conduct in

order to allow Company insiders to sell shares of their personally-held Orthofix common stock at

inflated prices, yielding them proceeds of more than $4.8 million during the Class Period:

**Orthofix International N.V. (OFIX)**
**Class Period Insider Sales**

| Filer Name | Title | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|
| Ferrari (Luigi) | Officer | 30-Nov-2011 | 21,239 | $34.25 | $727,436 |
| Ferrari (Luigi) | Officer | 03-Aug-2012 | 329 | $42.50 | $13,983 |
| Ferrari (Luigi) | Officer | 13-Aug-2012 | 1,300 | $42.00 | $54,600 |
| Ferrari (Luigi) | Officer | 15-Aug-2012 | 1,672 | $41.37 | $69,171 |
| Ferrari (Luigi) | Officer | 15-Aug-2012 | 700 | $41.20 | $28,840 |
| Ferrari (Luigi) | Officer | 16-Aug-2012 | 2,033 | $41.40 | $84,166 |
| Ferrari (Luigi) | Officer | 16-Aug-2012 | 677 | $41.40 | $28,028 |
| Ferrari (Luigi) | Officer | 16-Aug-2012 | 2,675 | $41.20 | $110,210 |
| Ferrari (Luigi) | Officer | 17-Aug-2012 | 4,323 | $41.40 | $178,972 |
| Ferrari (Luigi) | Officer | 17-Aug-2012 | 4,487 | $41.40 | $185,762 |
| Ferrari (Luigi) | Officer | 20-Aug-2012 | 10,460 | $41.40 | $433,044 |
| | | | 49,895 | | $1,914,211 |
| | | | | | |
| Finegan (Michael M) | Officer | 02-Aug-2012 | 3,300 | $41.02 | $135,366 |
| Finegan (Michael M) | Officer | 03-Aug-2012 | 11,700 | $41.84 | $489,528 |
| Finegan (Michael M) | Officer | 10-Aug-2012 | 10,000 | $41.78 | $417,800 |
| Finegan (Michael M) | Officer | 15-Aug-2012 | 7,000 | $41.00 | $287,000 |
| Finegan (Michael M) | Officer | 16-Aug-2012 | 3,000 | $41.20 | $123,600 |
| | | | 35,000 | | $1,453,294 |
| | | | | | |
| LEE BRAD | Officer | 02-May-2012 | 602 | $40.37 | $24,303 |
| LEE BRAD | Officer | 02-May-2012 | 14,050 | $40.70 | $571,835 |
| LEE BRAD | Officer | 02-May-2012 | 159 | $40.37 | $6,419 |
| LEE BRAD | Officer | 03-May-2012 | 18,000 | $40.45 | $728,100 |
| LEE BRAD | Officer | 03-May-2012 | 2,617 | $40.45 | $105,858 |
| | | | 35,428 | | $1,436,514 |
| | | | | | $4,804,019 |

## LOSS CAUSATION

64.     During the Class Period, as detailed herein, Defendants engaged in a scheme to

deceive the market and a course of conduct that artificially inflated the price of Orthofix common

stock and operated as a fraud or deceit on Class Period purchasers of Orthofix common stock by

failing to disclose and misrepresenting the adverse facts detailed herein.  As Defendants' prior

misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the

price of Orthofix common stock declined significantly as the prior artificial inflation came out of the

Company's common stock price.

65.     As a result of their purchases of Orthofix common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused Orthofix common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $45.62 per share on October 5, 2012.

66.     By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Orthofix's business, products and operations.  When the truth about the Company was revealed to the market, the price of Orthofix common stock fell significantly. This decline removed the inflation from the price of Orthofix common stock, causing real economic loss to investors who had purchased Orthofix common stock during the Class Period.

67.     The decline in the price of Orthofix common stock after the corrective disclosure came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in Orthofix common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

68.     The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Orthofix common stock and the subsequent significant decline in the value of Orthofix common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

69.     At all relevant times, the market for Orthofix common stock was an efficient market for the following reasons, among others:

(a)      Orthofix common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)      as a regulated issuer, Orthofix filed periodic public reports with the SEC and the NASDAQ;

(c)      Orthofix regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)      Orthofix was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

70.      As a result of the foregoing, the market for Orthofix common stock promptly digested current information regarding Orthofix from all publicly available sources and reflected such information in the prices of the common stock. Under these circumstances, all purchasers of Orthofix common stock during the Class Period suffered similar injury through their purchase of Orthofix common stock at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

71.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.      During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were

misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

74.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Orthofix common stock. Plaintiff and the Class would not have purchased Orthofix common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

75.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Orthofix common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Orthofix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Orthofix, and their ownership of Orthofix stock, the Individual

Defendants had the power and authority to cause Orthofix to engage in the wrongful conduct complained of herein.

78.     By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: August 14, 2013                ROBBINS GELLER RUDMAN
                                      & DOWD LLP
                                      SAMUEL H. RUDMAN
                                      DAVID A. ROSENFELD
                                      EVAN J. KAUFMAN


                                      _____
                                      DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com

HOLZER HOLZER & FISTEL LLC
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, GA  30338
Telephone: 770/392-0090
770/392-0029 (fax)
mfistel@holzerlaw.com

*Counsel for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| OFIX | March 14, 2013 | 200 | $37.55/share |
| | March 28, 2013 | 100 | $35.90/share |
| | April 26, 2013 | 300 | $32.00/share |
| | May 9, 2013 | 100 | $26.52/share |
| | May 9, 2013 | 300 | $26.795/share |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| OFIX | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9 day of 8 , 2013 in West Des Moines, IA .

                                                  City                  State

(Signature) X _____

(Print Name) TEJINDER SINGH

2